JIMMY SIDES, EMPLOYEE, PLAINTIFF v. G. B. WEAVER & SONS ELEC. CO., INC., EMPLOYER AND IOWA NATIONAL MUTUAL INSURANCE COMPANY, CARRIER, DEFENDANTS

No. 7119IC487

(Filed 15 September 1971)

1. Master and Servant § 77— workmen's compensation — additional compensation for change of condition — Form 28(b) — duty of carrier
     Industrial Commission Form 28(b) serves as explicit notice to the recipient of compensation benefits that if further benefits are claimed the Commission must be notified in writing within one year from the date of receipt of the recipient's last compensation check. The failure of the compensation carrier to furnish the recipient a copy of Form 28(b) with his last compensation check will estop the carrier from pleading the one year period as a bar to the recipient's claim for additional compensation on the ground of change of condition. G.S. 97-47; G.S. 97-80.

2. Master and Servant § 77— workmen's compensation — finding that injured employee never received Form 28(b) from compensation carrier — sufficiency of evidence
     A finding by the Industrial Commission that the recipient of compensation benefits never received a copy of Form 28(b) with his final compensation payment is supported by the evidence adduced at the hearing on the recipient's claim, where (1) the recipient testified that he never received a copy of the form; (2) the employer's book-

keeper was unable to say with certainty that she mailed a copy of the form along with the recipient's final compensation check; and (3) the compensation carrier contended that a second copy of Form 28(b) was mailed to the recipient but it could offer no evidence to support the contention.

3. **Master and Servant § 73— workmen's compensation — industrial blindness**

   A conclusion by the Industrial Commission that there was a causal relation between an employee's accident and his loss of vision in the right eye and that the employee was industrially blind in the right eye, *held* supported by the findings of fact and the evidence, which included the opinion testimony of the employee's doctor that the employee's loss of vision was probably caused by his accident, and which also included a finding that the extent of the employee's vision in the right eye was the ability to count fingers at three feet. G.S. 97-31(19).

APPEAL by defendants from order of North Carolina Industrial Commission filed 9 March 1971.

On 23 May 1967 plaintiff sustained an injury to his right eye in an accident arising out of and in the course of his employment. His physician was of the opinion he had sustained no permanent partial disability and certified him as able to return to work on 14 June 1967. Defendants accepted liability and in a check, dated 21 June 1967, paid plaintiff temporary total disability benefits in the sum of $28.80. Industrial Commission Form 21 (agreement for compensation for disability), dated 21 June 1967, was executed by the parties and thereafter filed with and approved by the Industrial Commission. No further compensation has been paid.

On 6 March 1969 plaintiff notified the Commission that he was claiming additional compensation because of a change in condition. A hearing was held 13 August 1969 before Deputy Commissioner Dandelake. Mr. Dandelake concluded that no request for a hearing was made within twelve months after the last payment of compensation as required by G.S. 97-47 and issued an order denying the claim. Upon review the Full Commission set aside the order, finding it incomplete because it contained no findings of fact as to whether Industrial Commission Form 28(b) had been furnished to plaintiff or received by him.

A second hearing was held before Deputy Commissioner Leake. In an order filed 7 October 1970, Mr. Leake held that

defendants had failed to furnish plaintiff with Form 28(b), as required by the rules of the Commission, and were therefore estopped from pleading the limitations of G.S. 97-47 in bar of plaintiff's claim. Mr. Leake further found that plaintiff has lost 85% of his vision in his right eye as a result of the injury he sustained 23 May 1967, and that this loss of vision can probably be reduced by a penetrating corneal transplant. Plaintiff was ordered to submit to a corneal transplant at the expense of defendants. The matters of permanent loss of vision and temporary total disability were left open.

Defendants appealed to the Full Commission which made a minor modification in one of the findings contained in the order and adopted the order as modified as its own. (The modification is not pertinent here.) Defendants appealed to this Court.

*Johnson, Davis & Horton by Clarence E. Horton, Jr., for plaintiff appellee.*

*Williams, Willeford & Boger by John Hugh Williams for defendant appellants.*

GRAHAM, Judge.

This appeal raises two questions: (1) Is the Commission's finding that no Form 28(b) was ever delivered to or mailed to plaintiff as required by the Commission's rule XI(5) supported by the evidence? (2) Did the Commission fail to determine in its order whether there is a causal relation between the compensable injury of 23 May 1967 and plaintiff's present condition?

[1] Under G.S. 97-47, a claim for additional compensation is barred, if the request for compensation is not made within twelve months from the date of the last payment, unless the carrier is estopped to plead the lapse of time. *Watkins v. Motor Lines,* 279 N.C. 132, 181 S.E. 2d 588. Under the Commission's rule XI(5), promulgated pursuant to statutory authority contained in G.S. 97-80, defendants must execute Form 28(b) and furnish a copy to a claimant with his last compensation check. A failure to do so will estop defendants from pleading the lapse of time in bar of a claim asserted for additional compensation on the grounds of a change in condition. *White v. Boat Corporation,* 261 N.C. 495, 135 S.E. 2d 216. The importance of Form 28(b) with respect to starting the running of the statutory period under G.S. 97-47 is that this form serves as explicit

notice to a claimant that if further benefits are claimed the Commission must be notified in writing within one year from the date of receipt of claimant's last compensation check.

[2] Defendants do not dispute the fact that a failure to furnish plaintiff with a copy of Form 28(b) would estop them from pleading the limitation period of G.S. 97-47 as a bar to plaintiff's claim for additional compensation, but as indicated above, they do challenge the Commission's finding that a copy of Form 28(b) was not in fact furnished plaintiff or mailed to him.

The evidence discloses that a copy of Form 28(b), dated 21 June 1967, was mailed by the carrier to the defendant employer, along with plaintiff's only compensation check, a copy of Form 21, and a form letter of transmittal. The employer's bookkeeper wrote plaintiff on 27 June 1967:

"We have a check for you in the amount of $28.80 from National Mutual Insurance Company. There are also papers for you to fill out.

Please come by the office and pick up the check and complete the papers as soon as it's convenient. The insurance company would like to have these papers as soon as possible in order to file with the Industrial Commission."

Plaintiff thereafter went by the employer's office where he signed Form 21 and received from the bookkeeper his compensation check. He denied receiving a copy of Form 28(b) and the bookkeeper was unable to say definitely that she furnished one to him. She did state that she recalled that plaintiff came in, signed the Form 21, and "I gave him the check, and shortly thereafter he left." In reply to a specific question as to whether she remembered delivering a green form like the form referred to as 28(b), the bookkeeper stated: "I really—I couldn't swear I did. I'm not familiar with insurance forms. If they had been stapled, I'm sure I did. I'm not that familiar with the forms." She further testified: "I would not swear I did. If it was attached to the letter, I assume I did—I don't know whether it was or not. As to being sure if the form was given if attached, all of the forms were not given to him. I suppose he has a copy of what I witnessed. I don't know if I gave him one of which I witnessed. If there was that many of them I don't remember if I gave him a copy of Form 28(b)."

An inference arises from the bookkeeper's testimony that she was unfamiliar with Workmen's Compensation claims and the requirement that certain copies of forms be furnished a claimant. (Actually, she was first employed by defendant employer in June of 1967—the same month she delivered defendant his check and obtained his signature to Form 21.) Her letter to plaintiff indicated he was to pick up only his check—the only mention of other items concerned papers which were to be filled out and returned to the carrier.

The bookkeeper's uncertainty as to whether she delivered the required Form 28(b) to plaintiff and her obvious unfamiliarity with the insurance forms and her duties in connection therewith, when coupled with plaintiff's insistence that he never at any time received a copy of Form 28(b), supports the Commission's finding that no copy of Form 28(b) was furnished to plaintiff. Findings of fact by the Industrial Commission are binding on appeal where supported by any competent evidence. *Jackson v. Highway Commission,* 272 N.C. 697, 158 S.E. 2d 865.

Defendants insist that a second Form 28(b) was prepared on 6 October 1967, and that a copy thereof was mailed directly to plaintiff at his home address by the carrier sometime in October of 1967. It is noted that this would not be in compliance with the Commission's rule XI(5) which requires defendants to send a copy of the form to a claimant *with his last payment of compensation.* Moreover, the Commission rejected this contention by finding that no Form 28(b) was ever furnished to plaintiff *or mailed to him.* The evidence supports this finding. Plaintiff and his mother testified that no mail of any kind was ever delivered to their address from the defendant carrier. Also, the carrier's claim supervisor, who brought up the matter of the second Form 28(b), was unable to say definitely that a copy was mailed to plaintiff. He stated, "I don't know of my own knowledge that the second Form 28(b) in October was mailed." The supervisor further stated that his testimony was based purely on what the file showed. There was no testimony that there was any indication in the file that a copy of Form 28(b), dated 6 October 1967, was mailed to plaintiff. Both 28(b) forms contained in the carrier's file were offered into evidence. The one dated 21 June 1967 indicates a copy was prepared for plaintiff. ("C. C. Jimmy Sides" appears thereon.) No similar notation appears on the form dated 6 October 1967.

We turn now to the second question raised by this appeal.

[3]   The Commission's findings relate the history of plaintiff's eye condition, beginning with the injury on 23 May 1967 which resulted in a diagnosis of herpes ulcer cornea, secondary to the injury. This condition cleared and when plaintiff was examined by his physician on 3 July 1967 the vision in his right eye had improved. No permanent disability was noted at that time, but it was noted that some scarring remained in the central cornea, indicating the dendritic figure had penetrated below the epithelium and had left the scar. Plaintiff was next seen by his physician on 23 April 1969. An examination on this occasion revealed that plaintiff's vision in the right eye was limited to hand motions at five feet and that he was unable to obtain visual fields. It is the physician's opinion that the herpes must have reoccurred; that it is not unusual for a person in plaintiff's condition to suffer with further episodes of the herpes disease, but is rather characteristic of the situation; and that, assuming the history given by plaintiff to be correct, the present condition was probably brought on by the initial injury. The Commission specifically found that the plaintiff is able to count fingers at three feet with the right eye and this is the extent of his vision. Further, that the plaintiff's loss of vision is more than 85 percentum and amounts to industrial blindness within the meaning of the Workmen's Compensation Act. (G.S. 97-31(19) provides that where there is 85 percentum, or more, loss of vision in any eye, it shall be deemed "industrial blindness" and compensated as for a total loss of vision of such eye.) These findings, which are supported by the evidence, support the Commission's conclusion that "[t]he plaintiff's loss of vision in the right eye is a result of the stipulated injury by accident to the right eye on May 23, 1967" and that "[t]he plaintiff at this time is industrially blind in the right eye."

It is our opinion that the findings and conclusions made by the Commission constitute a sufficient determination of all the crucial questions before it.

Affirmed.

Judges BROCK and VAUGHN concur.